UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BAPASN, INC. and GLEN R. GORMAN, individually, | |
| Plaintiffs, | No. 13 CV 5674 |
| v. | Judge Manish S. Shah |
| EQUILON ENTERPRISES d/b/a SHELL OIL PRODUCTS US and TRUE NORTH ENERGY, LLC, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Bapasn, Inc. and Glen R. Gorman each operate a gas station in the Chicago area. They each contracted to buy gas from defendant Equilon Enterprises, and did so for some time. Equilon then assigned the contracts to defendant True North Energy. Plaintiffs subsequently received gas from, and made payments to, True North, rather than Equilon.

In this lawsuit, plaintiffs allege that True North charged more for gas than the contracts permitted. Plaintiffs also allege that Equilon knew that would happen, and so acted in bad faith when it assigned the contracts to True North. Finally, Bapasn seeks a declaration that the bad faith assignment and higher prices render void a subsequent contract that it entered into directly with True North.

Defendants moved to dismiss the complaint. For the reasons discussed below, that motion is granted in part and denied in part.

I.   **Legal Standards**

Defendants' motion is brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure. I therefore construe the complaint in the light most favorable to the plaintiffs, accept as true all well-pleaded facts, and draw reasonable inferences in the plaintiffs' favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). Statements of law, however, need not be accepted as true. *Id.*

To survive defendants' motion, the complaint must "state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

II.   **The Facts**[1]

The plaintiffs each contracted to buy gas from defendant Equilon Enterprises, and did so for some time. SAC ¶¶ 8–13. In March 2010, Equilon assigned the contracts to defendant True North Energy, and plaintiffs began buying gas from True North. SAC ¶ 15. Bapasn's contract expired on February 28, 2011, and Gorman's expired on October 31, 2012. SAC ¶¶ 11, 13. Bapasn and True North entered a new contract, which became effective on March 1, 2011. SAC ¶ 16. The complaint does not state whether Gorman and True North entered a new contract.

In each contract, instead of a fixed price (in dollars per gallon, for example), the particular plaintiff agreed to pay "the price in effect at the time loading

---

[1] The facts recited are taken from the second amended complaint (Dkt. 21), which is cited as "SAC."

commences at the Plant for the place of delivery." SAC ¶ 38; SAC Ex. A ¶ 3(a).[2] The "Plant" is defined as the distribution plant from which gas is delivered to the particular plaintiff. SAC Ex. A ¶ 1(f). True North has other buyers, besides the plaintiffs here, and its contracts with those buyers contain identical price provisions. SAC ¶¶ 20, 24.

According to the complaint, True North charged plaintiffs more for gas than both (1) Equilon's price in effect at a particular plant (SAC ¶¶ 21–22); and (2) what True North charged some of its other buyers (SAC ¶¶ 23–24).[3] Plaintiffs contend that True North therefore charged more than the contracts permitted. SAC ¶¶ 39–40.

Plaintiffs allege that Equilon owns 49% of the shares of True North. SAC ¶ 25. Equilon allegedly knew, when it assigned the contracts to True North, that True North would overcharge plaintiffs. SAC ¶¶ 25, 32. Plaintiffs allege that Equilon assigned the contracts for the specific purpose of charging plaintiffs more than the contracts permitted. SAC ¶ 33–34.

### III. Analysis

#### A. Counts I and II

Count I asserts that Equilon breached the contracts by assigning them to True North in bad faith. SAC ¶¶ 30–36. Count II asserts that True North breached

---

[2] The three contracts—each plaintiff's contract with Equilon, and Bapasn's contract with True North—contain substantially the same price provision. SAC ¶¶ 10, 12, 17; *see also* Dkt. 24 at 2.

[3] The complaint does not specifically allege that True North's other buyers received gas from the same distribution plant, but that is a reasonable inference at this stage and defendants have not said otherwise.

the contracts by charging more than permitted. SAC ¶¶ 37–41. Defendants moved to dismiss both counts on the same ground: because the contracts do not set a fixed price, defendants had the right to increase the price, so there can be no bad faith or breach of contract by setting a price that is too high. Dkt. 24 at 4–9.

Defendants assert that their position was adopted by the Court of Appeals for the Seventh Circuit in *Beachler v. Amoco Oil Co.*, 112 F.3d 902 (7th Cir. 1997). In *Beachler*, the plaintiffs were gas station operators who contracted to buy gas from Amoco, and Amoco sought to assign its interests in the contracts to a third party wholesaler (referred to in the industry as a "jobber"). The plaintiffs sought a preliminary injunction, arguing that the assignment was invalid under Illinois law because it would materially increase their contractual burdens. *Id.* at 907–08. The plaintiffs primarily feared the possibility of increased gas prices. *Id.* at 908. But the court held that post-assignment price increases would not materially increase the plaintiffs' burdens, because Amoco had the contractual right—even absent an assignment—to set and increase prices. *Id.*

There are two critical differences between the facts in *Beachler* and the allegations here. First, the contracts in *Beachler* contained the following provision: "If this Agreement is assigned by Amoco to an Amoco jobber, the prices to be paid by Dealer for motor fuel and other products hereunder shall be as established by said jobber." *Id.* at 908. The contracts here have no such explicit provision obligating plaintiffs to pay prices set by Equilon's assignee. Second, unlike in *Beachler*, plaintiffs do not complain of *increased* prices, or prices that are *too high* in the sense

4

that they are above some maximum fixed level ($3/gallon, for example). Instead, plaintiffs complain that they were charged more than what their contracts call for: "the price in effect at the time loading commences" at the distribution plant. SAC ¶ 38; SAC Ex. A ¶¶ 1(f), 3(a). Plaintiffs have alleged that they were charged more than what Equilon would have charged them, and more than what True North charged other buyers. SAC ¶¶ 21–24. If that is true, it is plausible that they were charged more than "*the* price in effect." At this stage of the litigation, the inference I draw from the complaint is that defendants charged plaintiffs more than the contract price.

Alternatively, if (1) "the price in effect" means whatever True North decides to charge a particular buyer;[4] and (2) True North arbitrarily charged plaintiffs more than other buyers; then it is plausible that True North breached the contracts by failing to set prices in good faith (meaning honestly and in observance of reasonable commercial standards of fair dealing in the trade). *See* 810 ILL. COMP. STAT. 5/2-103(1)(b), 810 ILL. COMP. STAT. 5/2-305(2); *see also Oshana v. Buchanan Energy*, 2012 WL 426921, at *11–15 (N.D. Ill. 2012) (discussing good faith requirement and denying motion to dismiss a similar breach of contract claim).

It may be that the prices charged by defendants continued to be the "price in effect" and there was no breach of contract, but that issue cannot be resolved on a motion to dismiss. Nor can I say now whether Equilon's assignment to True North

---

[4] The parties have not briefed what "the price in effect" at the distribution plant means, and no single interpretation is plain from the face of the contracts, so I do not adopt a specific interpretation at this stage.

5

was done in bad faith, meaning that it was arbitrary, capricious, or inconsistent with the reasonable expectations of the contracting parties. *See Reserve at Woodstock, LLC v. City of Woodstock*, 354 Ill. Dec. 904, 916–17 (Ill. App. Ct. 2011) (finding a breach of the duty of good faith and fair dealing, which is implied in every contract). That question turns on facts—the parties' reasonable expectations and Equilon's motives—that are unknown at this stage. Accordingly, I do not dismiss Counts I and II in full.

Count I names both Equilon and True North as defendants, but makes allegations directed solely at Equilon. Count I is therefore dismissed as to True North. Count II concerns True North's post-assignment pricing, and both Equilon and True North are named as defendants. But the contracts that Equilon assigned to True North eventually expired: Bapasn's on February 28, 2011, and Gorman's on October 31, 2012. SAC ¶¶ 11, 13. After expiration, Equilon could not have breached a contract because it wasn't a party to any relevant contract. For each plaintiff, Count II fails to state a claim against Equilon for sales that occurred after that plaintiff's contract with Equilon expired.

**B. Count III**

Count III seeks a declaration that Bapasn's new contract with True North is void. SAC ¶ 47. Bapasn's theory is: *First*, Equilon's assignment to True North was invalid, because it was in bad faith and materially increased Bapasn's burdens. *Second*, because the assignment was invalid, True North lacked authority to enter into a subsequent contract with Bapasn. *Therefore*, Bapasn's new contract with True North is void. SAC ¶¶ 42–48; Dkt. 27 at 13–14.

Defendants argue that even if the original assignment was invalid, that would not void the subsequent contract between Bapasn and True North. Dkt. 24 at 11. The argument is well-taken. Bapasn responded that it "has alleged that without assignment of Bapasn's [contract] to True North, True North would have had no right to enter into any agreements with Bapasn, as it lacked authority to do so." Dkt. 27 at 13. But there is no plausible allegation in the complaint (or in plaintiffs' brief) that True North lacked the authority to contract with Bapasn. No fact is alleged that ties True North's authority to the validity of Equilon's assignment. Bapasn is correct that the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.*, restricts the ability of oil companies to terminate their contracts with gas station operators. Dkt. 27 at 13. But a restricted authority to *break* contracts says nothing at all about the authority to *enter* contracts. Bapasn has not supported its contention that True North lacked contracting authority, and I am not aware of any support for that contention.

Defendants' motion is therefore granted as to Count III. Count III is dismissed without prejudice.

IV. **Conclusion**

For the reasons stated above, defendants' motion to dismiss Count I is granted as to True North and denied as to Equilon. Defendants' motion to dismiss Count II is denied, with the following limitation: for each plaintiff, Count II fails to state a claim against Equilon for sales that occurred after that plaintiff's contract with Equilon expired. Defendants' motion to dismiss Count III is granted. The dismissal of Count III is without prejudice. The parties are directed to confer and

submit a proposed discovery schedule in advance of the next status hearing in this case.

ENTER:

ــــــــــــــــــــــــــــــــــــــــــــــــــــــ
Manish S. Shah
United States District Judge

Date: 8/19/14